```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
JOHN KATEHIS,                                                 :
                                                              :
                                    Petitioner,               :
                                                              :          MEMORANDUM & ORDER
                  -against-                                   :
                                                              :          17-cv-462 (ENV)
M. CAPRA, Superintendent of Sing Sing                         :
Correctional Facility,                                        :
                                                              :
                                    Respondent.               :
------------------------------------------------------------- x
```

VITALIANO, D.J.

*Pro se* petitioner John Katehis has made an application for a writ of *habeas corpus*, pursuant to 28 U.S.C. § 2254, targeting his 2011 state court judgment of conviction. For the reasons set forth below, the writ is denied and the petition seeking the writ is dismissed.

Background[1]

I.    The Death of George Weber

On the evening of Friday, March 20, 2009, 16-year-old Katehis arrived at the ground-floor apartment of 47-year-old George Weber at 561 Henry Street in Brooklyn. *See* Resp't Ex. A, Dkt. 8-1, Trial Transcript Vol. I ("I Tr.") 39–40, 146, 184; Resp't Ex. A, Dkt. 8-2, Trial Transcript Vol. II ("II Tr.") 126.[2] The two had arranged, through an advertisement on the "adult gigs" section of Craigslist, for Katehis to service, upon payment of $60, Weber's fetish for being "smothered." *See* I Tr. 169–70, 183–84.

Over the weekend that followed, amid concern for his safety, Weber's employer reported

---

[1] In light of Katehis's conviction, the facts are recited in the light most favorable to the verdict. *See Garbutt v. Conway*, 668 F.3d 79, 80 (2d Cir. 2012).

[2] All citations rely on ECF pagination, unless otherwise indicated.

to authorities that he had not been to work. *Id.* at 37–39. In response, on the morning of March 22, 2009, New York City Police Department ("NYPD") officers visited Weber's apartment building. *Id.* With no answer from Weber, the officers were let into the building by a resident living above Weber. *Id.* at 39. She told them she had heard water running in his apartment for a few days. *Id.* Unable to gain access to Weber's front door, the officers were able to enter the apartment through an unlocked rear door. *Id.*

The officer who was first to enter later testified at trial that the apartment looked ransacked, that there was blood all over, and that the apartment smelled of a dead body. *Id.* at 39–40. And, indeed, there was. Weber's body was found lying face-up underneath a blanket. *Id.* at 41. Pills had been spread over his face, *id.* at 42, there was a bitemark on his penis, and he had sustained over 50 knife wounds in his torso, head, and arms. II Tr. 135, 155. His right wrist had been bound with duct tape, and his clothes were pulled up around his shoulders and down around his ankles, which were also bound with duct tape. I Tr. 60.

Among the items recovered from Weber's apartment was his cell phone. *Id.* at 154. Weber's last telephone conversation was at 6:00 p.m. on March 20, 2009, with a contact named "Queens John," whose number the investigating officers traced to an address Katehis shared with his parents. *Id.* at 156–59. On March 24, 2009, NYPD detectives went to that address, where they spoke to Katehis's father. Katehis, they learned, had recently been hospitalized after being discovered semi-conscious on the evening of Friday, March 20, near a token booth inside the Jackson Avenue subway station, bleeding profusely from a finger—an injury he reported he sustained from a Snapple bottle. *Id.* at 127–29, 132. Katehis's father told the detectives that his son had since traveled to Middletown, New York. *Id.* at 160.

After this conversation with detectives, Katehis's father told petitioner he wanted to give

him money. *Id.* They arranged to meet that evening in a parking lot in Middletown. *Id.* Unbeknownst to Katehis, his father was accompanied by four unmarked NYPD vehicles. *Id.* at 161–62. As Katehis approached the vehicle in which his father was riding, detectives stepped out of their vehicles and identified themselves. *Id.* at 163. Katehis attempted to flee but was apprehended. *Id.* at 163–65. The police caravan traveled back to Brooklyn. *Id.* at 170. Along the way, although Katehis initially provided a fictious alias, *id.* at 168, he soon admitted to killing Weber, but claimed that it had been an accident. *Id.* at 170. Katehis was read his *Miranda* warnings back at the 76th Precinct in Brooklyn, after which he provided an oral and a written statement recounting what he contended was his accidental stabbing of Weber. *Id.* at 180, 182–87; II Tr. 17, 20.

II.    Trial and Post-Conviction Proceedings

Katehis stood trial in November 2011. He was found guilty of murder in the second degree, N.Y. Penal Law § 125.25(1), III Tr. 181, and was sentenced to 25 years to life in prison, *id.* at 215. He appealed his conviction to the Appellate Division, Second Department. On his direct appeal, he argued that (1) the evidence of guilt was legally insufficient; (2) the admission of evidence of uncharged crimes was unduly prejudicial; (3) trial counsel was ineffective for consenting to the admission of evidence of uncharged crimes; (4) the prosecution's reference to such evidence in summation exacerbated the prejudicial effect; and (5) the sentence imposed was excessive. *See* Resp't Ex. B (Dkt. 8-4 at 1). The Second Department affirmed his conviction without altering the sentence. *People v. Katehis*, 117 A.D.3d 1080, 1081 (N.Y. App. Div. 2014); *see also* Resp't Ex. D (Dkt. 8-4 at 90). Katehis, through counsel, applied for leave to appeal to the New York Court of Appeals, seeking review of all claims raised in the Appellate Division. Resp't Ex. E (Dkt. 8-4 at 93). In addition, in two *pro se* letters, Katehis supplemented his application with requests to raise a claim of ineffective assistance of trial counsel for counsel's

failure to request a charge on the lesser included offense of manslaughter in the first degree based upon extreme emotional disturbance. Resp't Ex. E, at 98–99, 102. Leave to appeal was denied on March 26, 2015. *People v. Katehis*, 25 N.Y.3d 951 (2015) (Rivera, J.).

On December 21, 2015, Katehis moved to vacate his conviction pursuant to N.Y.C.P.L. § 440.10(1)(h), claiming ineffective assistance of trial counsel under both state and federal law on the theories that (1) trial counsel allegedly failed to obtain his psychiatric and educational records to present a psychiatric defense, and (2) trial counsel neither advised Katehis to testify at trial nor informed him that the decision to testify was Katehis's to make. Resp't Ex. H (Dkt. 8-4 at 109). The court denied Katehis's § 440.10(1) motion on July 11, 2016. Resp't Ex. J (Dkt. 8-4 at 195). On October 4, 2016, the Second Department denied Katehis's application for leave to appeal.[3] Resp't Ex. M (Dkt. 8-4 at 210). Turning to a federal forum to vindicate his rights, as he saw them, Katehis filed a timely federal *habeas* petition, pursuant to 28 U.S.C. § 2254, on January 18, 2017. Pet., Dkt. 1, at 1–16; *see* 28 U.S.C. § 2244(d)(1)(A).

Standard of Review

The Anti-Terrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA") governs post-conviction federal *habeas* relief and provides that a writ of *habeas corpus* shall not issue with respect to any claim of a prisoner in state custody that was adjudicated on the merits in state court unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d); *see also Gutierrez v. McGinnis*,

---

[3] The Second Department's order was unappealable under N.Y.C.P.L. § 450.90(1), and petitioner's appeal was dismissed by the Court of Appeals on that ground. *See* Resp't Ex. G (Dkt. 8-4 at 107).

4

389 F.3d 300, 304 (2d Cir. 2004) (describing this standard as "AEDPA deference"). Such deferential review applies whenever a state court disposes of a state prisoner's federal claim on the merits, regardless of whether that court gives reasons for its determination or refers to federal law in its decision. *Harrington v. Richter*, 562 U.S. 86, 98–99, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011); *see also Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001).

As a legion of precedent makes abundantly clear, "[s]ection 2254(d) reflects the view [of Congress] that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington*, 562 U.S. at 102–03 (citation and internal quotations omitted). *Habeas* review under AEDPA "demands that state-court decisions be given the benefit of the doubt." *Hardy v. Cross*, 565 U.S. 65, 66, 132 S. Ct. 490, 181 L. Ed. 2d 468 (2011) (citation omitted). Where AEDPA deference applies, "[a] state court's findings of fact are 'presumed to be correct' unless rebutted 'by clear and convincing evidence.'" *Drake v. Portuondo*, 553 F.3d 230, 239 (2d Cir. 2009) (quoting 28 U.S.C. § 2254(e)(1)).

For the purposes of federal *habeas* review, "clearly established federal law" refers to the holdings, as opposed to *dicta*, of Supreme Court decisions that are controlling law at the time of the relevant state court decision. *Williams v. Taylor*, 529 U.S. 362, 412, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). A state court decision is "contrary to clearly established federal law," within the meaning of § 2254(d), if it contradicts relevant Supreme Court precedent or arrives at a different conclusion based on "materially indistinguishable" facts. *Id.* at 405–06. A state court decision is classified as one resting on an "unreasonable application" of federal law if it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. Even

erroneous state court decisions, then, if deemed reasonable, will survive *habeas* review. *Id.* at 411.

At the same time, the state court decision need not be "so far off the mark as to suggest judicial incompetence" before *habeas* relief may be granted. *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000) (citation omitted). It remains true that "a federal court may reverse a state-court ruling where it was 'so lacking in justification that there was . . . [no] possibility for fairminded disagreement.'" *Vega v. Walsh*, 669 F.3d 123, 126 (2d Cir. 2012) (per curiam) (quoting *Harrington*, 562 U.S. at 103). Yet, it must also be kept in mind that "[i]f this standard [warranting federal *habeas* relief] is difficult to meet—and it is—that is because it was meant to be." *Burt v. Titlow*, 571 U.S. 12, 20, 134 S. Ct. 10, 187 L. Ed. 2d 348 (2013) (citation and internal quotations omitted).

Critically, beyond that, a federal court may only provide *habeas* relief, pursuant to § 2254, if a petitioner first exhausted the remedies available in state court. 28 U.S.C. § 2254(b)(1)(A). This requirement of exhaustion "is designed to avoid the 'unseemly' result of a federal court 'upset[ting] a state court conviction without' first according the state courts an 'opportunity to . . . correct a constitutional violation.'" *Davila v. Davis*, 137 S. Ct. 2058, 2064, 198 L. Ed. 2d 603 (2017) (quoting *Rose v. Lundy*, 455 U.S. 509, 518, 102 S. Ct. 1198, 71 L. Ed. 2d 379 (1982)). "To satisfy § 2254's exhaustion requirement, a petitioner must present the substance of the same federal constitutional claim[s] that he now urges upon the federal courts to the highest court in the pertinent state." *Aparicio v. Artuz*, 269 F.3d 78, 89–90 (2d Cir. 2001) (internal citations and quotation marks omitted). A claim is not considered exhausted where the petitioner "has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). Further, to exhaust a claim, a petitioner may not raise

6

"a federal claim for the first time in an application for discretionary review to a state's highest court," as opposed to a review as of right. *St. Helen v. Senkowski*, 374 F.3d 181, 183 (2d Cir. 2004).

## Discussion

Katehis's petition advances, in a new iteration, the mélange of issues raised on his denied direct appeal and in his C.P.L. § 440.10 motion. Neither individually nor collectively do they warrant the issuance of a federal writ of *habeas corpus*.

I. <u>Failure to Effectively Pursue a Psychiatric Defense</u>

At its very heart, the Sixth Amendment guarantees a criminal defendant not only a lawyer, but a lawyer who renders the effective assistance of legal counsel. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 2063, 80 L. Ed. 2d 674 (1984). In its evaluation of an ineffective assistance claim, a reviewing court must first assess whether representation at trial "fell below an objective standard of reasonableness," ever mindful of the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 688–89. Objectively unreasonable representation runs afoul of the Sixth Amendment only if there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. Given its clearly established nature, the *Strickland* standard is necessarily invoked by a Sixth Amendment ineffective assistance claim, regardless of the particular theory raised. *Sellan*, 261 F.3d at 309 (citing *Williams*, 529 U.S. at 391).

Notwithstanding the fundamental right over which *Strickland* stands guardian, a federal court reviewing a § 2254 petition does not engage in a *de novo* assessment of a petitioner's state counsel's representation. Rather, consistent with the function of federal *habeas* review, it is the task of the reviewing court to evaluate whether the denial of petitioner's ineffective assistance

7

claim by a state court, which, given that its review is unfettered by AEDPA, "has even more latitude to determine that a defendant has not satisfied [the *Strickland*] standard," was unreasonable. *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). *Habeas* review, therefore, adds a hurdle to an already deferential standard under *Strickland*. *See Premo v. Moore*, 562 U.S. 115, 122 (2011) (holding that the *Strickland* and § 2254(d) standards are "'highly deferential' . . . and when the two apply in tandem, review is 'doubly' so." (first quoting *Strickland*, 466 U.S. at 689, then *Knowles*, 556 U.S. at 123)).

In denying Katehis's § 440.10(1) motion, the trial court found that there was no basis to hold his counsel ineffective. Resp't Ex. J, at 197. To the contrary, it found that the documents Katehis attached in support of his allegation reflected "no psychiatric condition of a nature and extent that would have supported a defense of extreme emotional disturbance," and that:

> There is no indicia of any hospitalization related to the purported psychiatric condition, nor does the defendant point to any. Nor does the defendant disclose the names of any treating physicians who might have supported his defense or provide any pertinent psychiatric records, leading this court to find that the evidence defendant claims counsel did not obtain simply does not exist.

*Id.*

Nothing in the record here suggests any facts to the contrary, much less any so compelling as to torpedo the state court finding. Indeed, the petition contains only vague references to "educational & psychiatric records," "issues dating back to childhood proving petitioner suffered from emotional disturbance," and "an extensive history of mental problems that transpired in his young life," Pet. Mem., Dkt. 1-2, at 6; *see* Resp't Ex. H, at 120; but, once again, Katehis does not point to any specific documents that trial counsel could have, but failed, to obtain.

Accordingly, under the highly deferential standard compelled by the combination of *Strickland* and AEDPA, the state court's rejection of Katehis's first claim of ineffective

assistance of counsel was not contrary to nor an unreasonable application of clearly established law, nor was it an unreasonable determination of the facts in light of the evidence Katehis presented to the state court in support of his motion. *See Harrington*, 562 U.S. at 98–99; *see also* 28 U.S.C. § 2254(d); *Strickland*, 466 U.S. at 688. As a consequence, the writ may not issue on this ground.

II.     Jury Instruction on Extreme Emotional Disturbance

Respondent attacks petitioner's second ineffective assistance claim procedurally and substantively. The warden points out that there is nothing in the trial record regarding any such instruction, and, with no record, the claim was not presented on direct appeal, nor did Katehis make such a claim by way of a C.P.L. § 440.10 motion, leaving that remedy unexhausted. Nevertheless, he argues, the claim could have been raised on direct appeal, but, lacking justification, was not, and has, therefore, been procedurally defaulted. Despite the force of his procedural argument, the warden fires the other barrel, urging the Court to reject Katehis's claim on a *de novo* review of the merits.

The Court need not accept the warden's invitation to wade into the murky waters stirred by Katehis's failure to raise this issue on direct appeal, namely, whether Katehis has fully exhausted his claim, or instead, whether it is procedurally defaulted. This is so because the exhaustion principle is "relaxed when the state courts themselves have disregarded the default and decided the constitutional claim on its merits." *Roman v. Abrams*, 822 F.2d 214, 222 (2d Cir. 1987). On review of Katehis's motion to vacate the judgment, the trial court did not view his claim of ineffective assistance through the lens of procedural default, but instead, it rejected it on the merits. Specifically, the trial court construed his ineffective assistance claim as grounded in part in his trial counsel's failure to request an extreme emotional disturbance instruction, observing that, although Katehis's trial counsel filed a notice pursuant to C.P.L. § 250.10 of his

9

intention to pursue that affirmative defense, "after an investigation by counsel, he represented to the court that he would not offer such a defense," and that this strategic decision did not amount to the ineffective assistance of counsel. Resp't Ex. J, at 197.

Put plainly, the fact that the state courts could have procedurally side-stepped this claim is immaterial. Katehis's claim of ineffectiveness on this basis was fairly presented and adjudicated by the state courts. As a result, the state court's adjudication of Katehis's claim on the merits is entitled to AEDPA deference. And, because the state court's articulated reasoning was neither contrary to nor an unreasonable application of federal law, as clearly established by *Strickland*, the claim is dismissed.

III.   Legal Sufficiency of the Verdict

Katehis's contention that the evidence supporting the verdict was legally insufficient sounds in the denial of due process in violation of the Fourteenth Amendment. *See Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979) (holding the Fourteenth Amendment to require that "record evidence could reasonably support a finding of guilt beyond a reasonable doubt"). A reviewing court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.*

On direct appeal, the Second Department, viewing the evidence in the light most favorable to the prosecution, held that the evidence "was legally sufficient to establish [his] guilt beyond a reasonable doubt." Resp't Ex. D, at 91. Katehis makes no showing to overcome AEDPA deference and upset that finding, and his claim is dismissed on that basis.[4]

---

[4] The Second Department held, in the alternative, that Katehis failed to preserve his claim of legal insufficiency. Resp't Ex. D, at 91. *Habeas* review of Katehis's claim, therefore, is precluded by the Second Department's "explicit[] invo[cation of] a state procedural bar rule as a

IV.     Weight-of-the-Evidence Claim

A claim that the verdict was against the weight of the evidence is a "pure state law claim" and is "distinct from an attack on a verdict based on the legal sufficiency of the evidence," which is "based on federal due process principles." *Correa v. Duncan*, 172 F. Supp. 2d 378, 381 (E.D.N.Y. 2001). Under AEDPA, a federal court may not grant *habeas* relief "to a petitioner who challenges a state conviction on state law grounds." *Pallonetti v. Racette*, No. 11-cv-3563 (SLT), 2014 WL 4161957, at *3 (E.D.N.Y. Aug. 19, 2014); *see also Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S. Ct. 475, 480, 116 L. Ed. 2d 385 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law."). Since it presents an issue of state law only, Katehis's weight of the evidence claim is a non-starter here. *See Lewis*, 497 U.S. at 780; *see also Correa*, 172 F. Supp. 2d at 381. It cannot provide a ground for the issuance of a federal writ of *habeas corpus*, and it is dismissed for that reason.

V.      Admission of Evidence of Uncharged Crimes

It is elementary under AEDPA that state courts must be given the opportunity to resolve constitutional claims before they are presented to a federal *habeas* court. *Duncan v. Henry*, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L. Ed. 2d 865 (1995) (per curiam); *Carvajal v. Artus*, 633 F.3d 95, 104 (2d Cir. 2011). To give a state court that opportunity, a *habeas* petitioner must, in

---

separate basis for decision," which constitutes an adequate and independent state ground for decision. *Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir. 1990) (quoting *Harris*, 489 U.S. at 264 n.10). Although Katehis may overcome this procedural bar by "a showing of cause for the default and resulting prejudice, or a demonstration that failure to consider the federal claim will result in a 'fundamental miscarriage of justice,'" he has not done so here. *Id.* (internal citation omitted) (quoting *Murray v. Carrier*, 477 U.S. 478, 495, 106 S. Ct. 2639, 2649, 91 L. Ed. 2d 397 (1986)).

either his direct appeal or on state collateral review, have: (1) relied on federal cases employing constitutional analysis; (2) relied on state cases employing federal constitutional analysis in cases with similar facts; (3) asserted the claim in "terms so particular as to call to mind a specific right protected by the Constitution"; or (4) alleged facts that are "well within the mainstream of constitutional litigation." *Daye v. Attorney General*, 696 F. 2d 186, 194 (2d Cir. 1982) (en banc), *cert. denied*, 464 U.S. 1048 (1984); *see also Ramirez v. Attorney Gen. of State of N.Y.*, 280 F.3d 87, 94–95 (2d Cir. 2001). Absent such state court review, however, a federal court may nevertheless deem the claim exhausted under § 2254(b)(1)(B)(i) "if it is clear that the unexhausted claim is procedurally barred by state law and, as such, its presentation in the state forum would be futile." *Aparicio*, 269 F.3d at 90. In any event, however, dismissal of a procedurally defaulted claim is required absent a showing of good cause for the failure to exhaust and resulting prejudice, *Ramirez*, 280 F.3d at 94 (citing *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977)), or alternatively, a "fundamental miscarriage of justice," such as a showing of actual innocence. *Velasquez*, 898 F.2d at 9; *see also Wainwright*, 433 U.S. at 87; *DiSimone v. Phillips*, 461 F.3d 181, 190 (2d Cir. 2006) (citing *Bousley v. United States*, 523 U.S. 614, 622, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998)). To put it clearly, and bluntly, the road to a writ on an unexhausted claim is long, arduous and littered with innumerable failed petitions.

On direct appeal to the Second Department, Katehis argued that the admission of "highly prejudicial" and "irrelevant" evidence "deprived [him] of due process and a fair trial." Resp't Ex. B, at 25. Unlike the ineffective assistance claims raised in his § 440.10(1) motion, however, Katehis did not signal his claim derived from the United States Constitution. To the contrary, although he claimed ineffective assistance of trial counsel pursuant to *Strickland* for agreeing to

12

admit the purportedly prejudicial evidence, his argument as to fair trial and due process violations relied only on state court opinions that exclusively applied state evidentiary law. *See id.* at 26–30 (citing *People v. Zackowitz*, 254 N.Y. 192 (1930), and *People v. Mercado*, 120 A.D.2d 619 (N.Y. App. Div., 2d Dep't 1986)). He did not renew his claim in his § 440.10 motion. As a result, Katehis did not present the state courts a "full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S. Ct. 1728, 1732, 144 L. Ed. 2d 1 (1999). Nor can he now, as § 440.10 bars him from raising a claim, such as this, that he failed to raise on direct appeal, N.Y. Crim. Proc. Law § 440.10(2)(c), and he provides no showing of cause, prejudice, or actual innocence. *See Ramirez*, 280 F.3d at 94. He has thus failed to show entitlement to the writ as to this claim, which must be dismissed.[5]

## Conclusion

For the foregoing reasons, a writ of *habeas corpus* is denied, and the petition is dismissed.

Since petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability shall not issue. *See* 28 U.S.C. § 2253(c)(2). The Court certifies,

---

[5] In any event, given Katehis's showing here, even construing the Second Department's ruling as addressing a federal claim, it would nevertheless be sustained on the grounds of AEDPA deference. Although Katehis has failed to identify a Supreme Court case clearly establishing that the erroneousness admission of the purportedly irrelevant and prejudicial evidence here constituted a federal due process violation, the Supreme Court has held that such violation occurs only where it "so infused the trial with unfairness." *Estelle*, 502 U.S. at 75 (quoting *Lisenba v. California*, 314 U.S. 219, 228, 62 S. Ct. 280, 286, 86 L. Ed. 166 (1941)). In its denial of Katehis's direct appeal, the Second Department held that Katehis's consent to admit the purportedly prejudicial evidence vitiates any due process violation, and that the prosecution's references to such evidence during summation were fair characterizations of the evidence, permissible responses to defense counsel's summation, permissible rhetoric, or did not otherwise deprive Katehis of a fair trial. Resp't Ex. D, at 92. Such ruling withstands AEDPA deference.

pursuant to 28 U.S.C. § 1915(a), that any appeal from this Memorandum and Order would not be taken in good faith and, therefore, *in forma pauperis* status is denied for the purpose of any appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962).

The Clerk of Court is directed to mail a copy of the Memorandum and Order to petitioner, to enter judgment accordingly and to close this case.

So Ordered.

Dated: Brooklyn, New York
        June 28, 2020

                                                  /s/ Eric N. Vitaliano
                                                  ERIC N. VITALIANO
                                                  United States District Judge